UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TRENTON DEKKER and KYLE MORRIS,

               Plaintiffs,             Case No.  11-cv-00252 (RHB)

vs.                                  HON. ROBERT HOLMES BELL
CONSTRUCTION SPECIALTIES OF
ZEELAND, INC., JUSTIN KOERT,
BERNARD KNAACK, and ISAAC KOERT,
               Defendants.

| | |
|---|---|
| Gregory J. McCoy (P51419) | William H. Fallon (P33132) |
| Nicholas R. Dekker (P70930) | Stephanie J. Cebulski (P74955) |
| CUNNINGHAM DALMAN, PC | MILLER JOHNSON |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 321 Settlers Road; P.O. Box 1767 | 250 Monroe Avenue, N.W., Suite 800 |
| Holland, MI  49422-1767 | P.O. Box 306 |
| | Grand Rapids, MI 49501-0306 |
| | (616) 831-1700 |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND
MOTION FOR JUDGMENT ON THE PLEADINGS**

***ORAL ARGUMENT REQUESTED***

## Table of Contents

Page

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

I. PLAINTIFFS' EMPLOYMENT WITH CONSTRUCTION
SPECIALTIES OF ZEELAND, INC. ......................................................................2

II. PLAINTIFFS' TIME-KEEPING PRACTICES .......................................................3

III. PLAINTIFFS' WORK AT OUT-OF-TOWN JOB SITES........................................3

    A. Plaintiffs' Overnight Travel To and From Out-of-Town Job Sites ..........3

    B. Plaintiffs' Regular Workday While at Out-of-Town Job Sites..............4

    C. CSI Changes Its Compensation Policy for Employees' Overnight
    Travel To Out-of-Town Job Sites. ....................................................5

IV. PLAINTIFFS' ACTIVITIES WHILE WAITING FOR WORK TO
START DUE TO UNFORESEEN DELAYS.........................................................6

V. PLAINTIFFS' LUNCH PERIODS...........................................................................6

ARGUMENT .........................................................................................................................7

I. LEGAL STANDARDS .............................................................................................7

    A. The Legal Standard for Summary Judgment ........................................7

    B. The Legal Standard for Judgment on the Pleadings ............................8

II. PLAINTIFFS CANNOT ESTABLISH ANY CLAIM FOR
COMPENSATION UNDER THE FAIR LABOR STANDARDS ACT,
BECAUSE THE UNDISPUTED FACTS SHOW THAT CSI PAID
THEM FOR ALL "HOURS WORKED."..................................................................9

    A. Plaintiff Were Not Entitled, by Company Policy or by Law, to Pay
    For Overnight Travel To and From Out-of-Town Job Sites....................9

        1. CSI Policy Did Not Provide For Employees To Be Paid For
        Overnight Travel To Job Sites. ................................................9

        2. The FLSA Does Not Require CSI to Pay Plaintiffs For
        Time Spent Commuting In A Company-Provided Van To
        Out-of-Town Job Sites............................................................10

Table of Contents
(continued)

Page

a.   Plaintiffs' Travel from CSI to Out-of-Town Job Sites Was Their Normal Commute From Home To Work. .........................................................10

b.   Commuting By Carpool in an Employer-Provided Vehicle Is Not Compensable Under the FLSA. ............................12

3.   The FLSA Does Not Require CSI to Pay Plaintiffs For Overnight, Out-of-Town Travel Outside Their Regular Work Hours. ............................................................13

B.   Plaintiffs' Activities While Waiting for Work to Start Due to Unforeseen Delays Do Not Constitute Hours Worked Because Plaintiffs Were "Waiting to Be Engaged." ...............................................15

1.   CSI Did Not Constrain Plaintiffs' Free Will Because CSI Permitted Plaintiffs to Leave the Job Site and Plaintiffs Used the Time for Personal Activities. .......................................16

2.   CSI Did Not Benefit from the Waiting Time. ...........................16

3.   CSI Did Not Agree to Pay Plaintiffs for Waiting Time. ...........17

4.   CSI Did Not Require Plaintiffs to Wait at the Job Site. ...........17

C.   The FLSA Did Not Require CSI to Pay Plaintiffs for the Unpaid Portion of Their Lunch Period, Because Plaintiffs Were Completely Relieved of Their Duties. ...............................................18

D.   Any Claims Outside FLSA's Two-Year Default Statute of Limitations Fail As a Matter of Law, Because Defendants' Actions Were Not Willful. ........................................................20

III.   PLAINTIFFS' MINIMUM WAGE LAW CLAIM FAILS BECAUSE THE LAW DOES NOT APPLY TO PLAINTIFFS' EMPLOYMENT WITH CSI. ........................................................................20

IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE DEFENDANTS PAID PLAINTIFFS FOR ALL HOURS WORKED. ...........21

V.   THE COURT SHOULD DISMISS PLAINTIFFS' STATE PREVAILING WAGE CLAIM. ........................................................................21

Table of Contents
(continued)

Page

A.    The Court Should Not Exercise Supplemental Jurisdiction Over
Plaintiffs' Unrelated and Distracting State Prevailing Wage
Claims. ..................................................................................................21

B.    The Court Should Dismiss Plaintiffs' Prevailing Wage Claim
Under Fed. R. Civ. P. 12(c) Because Count IV Fails to State a
Claim upon Which Relief Can Be Granted..........................................23

C.    Plaintiffs Cannot Prove That They Performed Any Work Covered
by the New Jersey Prevailing Wage Act..............................................24

CONCLUSION....................................................................................................25

<u>Index of Authorities</u>

Page

**Cases**

*Ahearn v.Charter Township of Bloomfield*, 100 F3d 451 (6th Cir 1996) ..................................... 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................... 8

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................... 8, 23, 24

*Barber v.SMH (US), Inc*, 202 Mich App 366; 509 NW2d 791 (1993).......................................... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 8, 23, 24

*Bernal v. Trueblue, Inc.*, 730 F.Supp.2d 736 (W.D. Mich. 2010) ......................................... 15, 16

*Birdwell v. City of Gadsden*, 970 F.2d 802 (11th Cir. 1992).................................................. 16

*Blakely v.US*, 276 F3d 853 (2002) ......................................................................... 22

*Brown v. Cassens Transp. Co.,* 743 F. Supp. 2d 651 (E.D. Mich. 2010) ................................... 23

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)........................................................ 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 8

*Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir. 2010) ............................................... 22, 23

*Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185 (5th Cir. 1989) ................................................ 16

*Hill v. United States*, 751 F.3d 810 (6th Cir. 1984) ....................................................... 15, 18

*Irwin v. Clark*, 400 F.2d 882 (9th Cir. 1968)............................................................. 17

*Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693 (E.D. Tex. 2007)............................ 12

*Kavanagh v. Grand Union Co.*, 192 F.3d 269 (2d Cir. 1999) ............................................. 11

*Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995)............................................................ 22

*Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606 (6th Cir. 1992) ................................................ 15

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)..................................................... 20

*Myers v. Copper Cellar Corp.*, 129 F.3d 546 (6th Cir. 1999) ................................................. 9

*Padilla v. City of Saginaw*, 867 F. Supp. 1309 (E.D. Mich. 1994).............................................. 22

Index of Authorities
(continued)

Page

*Reed v. Auto Workers*, 564 F.3d 781 (6th Cir. 2009)................................................................. 7

*Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010).......................................................... 12

*Skidmore v. Swift*, 323 U.S. 134 (1944)................................................................ 15, 17

*Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006)..................................... 11, 12

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ............................................. 8

*Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994)................................................................. 11, 12, 17

**Statutes**

28 U.S.C. § 1367(a) ................................................................................................. 21, 22

28 U.S.C. § 1367(c) ................................................................................................. 22

29 U.C.S. § 254 (a)(1) .............................................................................................. 10

29 U.C.S. § 254(a) .................................................................................................. 12

29 U.S.C. § 206 ...................................................................................................... 9

29 U.S.C. § 207(a)(1) .............................................................................................. 9

29 U.S.C. § 255 ...................................................................................................... 20

29 USC § 201 ......................................................................................................... 1

MCL § 408.384 ...................................................................................................... 21

MCL § 408.394(1) .................................................................................................. 21

N.J.S.A. 34:11-56.25 .............................................................................................. 25

N.J.S.A. 34:11-56.26 .............................................................................................. 25

N.J.S.A. 34:11-56.59 .............................................................................................. 24

N.J.S.A. 34:11-56.62 .............................................................................................. 24

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 8, 23

Index of Authorities
(continued)

Page

Fed. R. Civ. P. 12(c) ................................................................................................ 8, 23

Fed. R. Civ. P. 12(h)(2) ................................................................................................. 8

Fed. R. Civ. P. 56 .................................................................................................. 1, 7, 8

**Regulations**

29 C.F.R. § 785.14 ....................................................................................................... 15

29 C.F.R. § 785.19 ....................................................................................................... 18

29 C.F.R. § 785.35 ....................................................................................................... 11

29 C.F.R. § 785.39 ....................................................................................................... 13

## INTRODUCTION

Plaintiffs Trenton Dekker and Kyle Morris resigned from their employment as carpenters with Defendant Construction Specialties of Zeeland, Inc., ("CSI") in December 2010. In March 2011 they filed this lawsuit alleging that CSI did not properly compensate them in certain respects. The Complaint purports to assert claims for violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (Count I); violation of the Michigan Minimum Wage Law (Count II); unjust enrichment (Count III); and violation of a New Jersey state prevailing wage law (Count IV).

Defendants move for summary judgment under Rule 56 on all four counts of the Complaint, because the undisputed facts show that Plaintiffs cannot establish the essential elements of those claims. CSI also moves to dismiss the state prevailing wage claim in Count IV, because that claim is not properly within the Court's supplemental jurisdiction, and because that Count fails to state a claim upon which relief can be granted.

Count I of the Complaint seeks compensation under the FLSA for three types of time – overnight travel to job sites, waiting time, and lunch periods – but the undisputed facts defeat each of these claims. First, Plaintiffs were not entitled to pay for overnight travel time for three reasons: (1) The "company policy" on which their travel time claim is based was changed, by agreement with CSI employees, to replace the pay for overnight travel time with an increase in the per diem allowance and a two-week paid "sabbatical" each year; (2) Plaintiffs' overnight out-of-town travel is not compensable under the FLSA as a matter of law; and (3) Plaintiffs' overnight travel in a company vehicle to remote job sites was commuting time that is not compensable under the FLSA. Second, the limited time Plaintiffs spent waiting at job sites is not compensable because Plaintiffs were "waiting to be engaged" rather than "engaged to wait." Third, Plaintiffs' unpaid lunch periods were not compensable because Plaintiffs were

"completely relieved" of their duties during that time.  Fourth, Plaintiffs' claim of a "willful" violation must be dismissed because it is not supported by any allegation or evidence.

Plaintiffs' identical claims under the Michigan Minimum Wage Act (Count II) fail because that Act does not cover Plaintiffs' employment with Defendants.

Plaintiffs cannot establish the unjust enrichment claim in Count III, because the undisputed facts show that CSI properly compensated Plaintiffs for all hours Plaintiffs worked.

Finally, the Court should dismiss Plaintiffs' state law prevailing wage claim (Count IV).  First, that claim does not fall within the Court's supplemental jurisdiction because it does not arise from a common nucleus of operative fact with Plaintiffs' FLSA claim.  The exercise of supplemental jurisdiction over such an unrelated state claim would be inappropriate in any event.  Second, the allegations in Count IV are insufficient to state a claim for relief under federal pleading standards.  Third, summary judgment is appropriate on Count IV because the only state prevailing wage law Plaintiffs cite in their Complaint – a New Jersey statute that applies to building services – does not apply to the construction work Plaintiffs performed in New Jersey.

**STATEMENT OF FACTS**

## I.  PLAINTIFFS' EMPLOYMENT WITH CONSTRUCTION SPECIALTIES OF ZEELAND, INC.

Construction Specialties of Zeeland, Inc. ("CSI") specializes in the installation of light gauge steel trusses.  (**Exhibit 1**, Decl. of Ed Lekan, ¶ 3)  Because of the specialized nature of its work, CSI contracts with clients across Michigan and the eastern and southern portions of the United States.  (Lekan Decl. at ¶ 4)

Plaintiffs Kyle Morris and Trenton Dekker became employed by CSI in October 2006 and October 2007 respectively.  (**Exhibit 4,** Dep. of Kyle Morris, p. 8; **Exhibit 5**, Dep. of

Trenton Dekker, pp. 9-10)  Both Plaintiff worked as carpenters with the primary duty of installing steel trusses at various job sites.  (Dekker Dep. at 11-12; Morris Dep. at 10)  Beginning in March 2010, Dekker served as a working foreman on four job sites.  (Lekan Decl. at ¶ 5; Dekker Dep. at 16-17, 74-75)  Both Plaintiffs resigned from CSI in December 2010.  (Dekker Dep. at 10; Morris Dep. at 8)

## II.   PLAINTIFFS' TIME-KEEPING PRACTICES

Plaintiffs were responsible for recording the hours they worked each day on daily time sheets, and submitted their time sheets to CSI at the end of each week.  (Dekker Dep. at 37, 39; Morris Dep. at 26)  Plaintiffs kept no other records of their time.  (Dekker Dep. at 52, 81, 90, 107; Morris Dep., at 37, 44)  Plaintiffs completed and submitted their own time sheets weekly or biweekly, but in some instances they copied time entries from other employees.  (Dekker Dep. at 37-38; Morris Dep. at 27)

## III.   PLAINTIFFS' WORK AT OUT-OF-TOWN JOB SITES

### A.   Plaintiffs' Overnight Travel To and From Out-of-Town Job Sites

Plaintiffs worked almost entirely at out-of-town job sites.  (Dekker Dep. at 34-35; Morris Dep. at 14-15)  CSI's Handbook notified Plaintiffs of this fact at the outset of their employment.  (Dekker Dep. at 105-106; Morris Dep. at 35-36)  The Handbook stated:  "Your work will be performed at various locations throughout Michigan and the eastern United States, as far south as Florida."  (**Exhibit 6**, CSI Employee Handbook, p. 13)

Out-of-town jobs typically lasted ten consecutive work days, Tuesday through the following Thursday.  The assigned crew remained out-of-town overnight for that 10-day period. (Dekker Dep. at 20; **Exhibit 7,** Dep. of Sally Koert, p. 23)

CSI offered employees the option of carpooling to each job site in a company-owned van. (Lekan Decl. at ¶ 6)  CSI did not require employees to ride in the company van, but

3

provided the van as an option for the convenience of employees who did not want to drive their own vehicles or use other transportation.  (Lekan Decl. at ¶ 8; Dekker Dep. at 34; Morris Dep. at 31; Justin Koert Dep. at 30)  Both Plaintiffs voluntarily chose to carpool in the company van to every job site where they worked.  (Dekker Dep. at 58; Morris Dep. at 32)  Plaintiffs testified that they preferred carpooling in the company van because it saved fuel costs as well as wear and tear on their personal vehicles.  (Dekker Dep. at 57-58; Morris Dep. at 31-32)

Employees who chose to carpool in the company van met at CSI's office in Zeeland on Monday evening between 6:00 p.m. and 6:30 p.m. to depart for the job site.  (**Exhibit 8**, Dep. of Justin Koert, p. 35; **Exhibit 9**, Dep. of Isaac Koert, p. 8)  Each job crew then rode overnight in a separate van to its assigned job site.  (Justin Koert Dep. at 29-30; Dekker Dep. at 34; **Exhibit 2**, Decl. of Justin Koert, ¶ 3; **Exhibit 3**, Decl. of Isaac Koert, ¶ 3)  At the end of the work day on the following Thursday, the job crew drove overnight back to CSI.  (Decl. of Justin Koert, ¶ 3; Decl. of Isaac Koert, ¶ 3)

CSI did not assign or require any individual employee to drive the van.  (Dekker Dep. at 33-34, 58)  Instead, the carpooling employees discussed the drive among themselves, and those holding driver's licenses volunteered to drive for certain portions of the trip.  (Justin Koert Dep. at 43; Isaac Koert Dep. at 9-10; Dekker Dep. at 33-34, 58; Morris Dep 24)  Not everyone with a driver's license volunteered to drive.  (Isaac Koert Dep. at 9)  Individuals who did not possess a valid driver's license did not drive.  (*Id.*)  Kyle Morris did not have a driver's license until June 2010.  (**Exhibit 10**, Kyle Morris Driving Record)  Van passengers spent their time listening to music, playing games, or sleeping.  (Dekker Dep. at 34)

**B.      Plaintiffs' Regular Workday While at Out-of-Town Job Sites**

The foreman on each job set the work schedule for the crew working on that job.  (Justin Koert Decl. at ¶ 4; Isaac Koert Decl. at ¶ 4)  Workdays on the job site generally started at

7:00 a.m. and ended by 4:00 p.m.  (Justin Koert Decl. at ¶ 5; Isaac Koert Decl. at ¶ 5)  The employees' actual hours each day could vary due to seasonal changes in daylight hours or conditions on the job.  (Justin Koert Dep. at 18; Dekker Dep. at 76; Morris Dep. at 38; Justin Koert Decl. at ¶ 5; Isaac Koert Decl. at ¶ 5)  Plaintiffs' hours from March 2009 until their resignations in December 2010 are shown on their time sheets.  (Lekan Decl., Ex. A, Trenton Dekker Time Sheets; Lekan Decl., Ex. B, Kyle Morris Time Sheets)

**C.**      **CSI Changes Its Compensation Policy for Employees' Overnight Travel To Out-of-Town Job Sites.**

When Plaintiffs began their employment, the CSI Employee Handbook contained a "Drive Time Pay" policy.  (Exhibit 6, p. 10)  Under that policy, CSI paid employees $10.00 per hour for time spent travelling from Zeeland to the remote job sites.  (*Id.*)

In May 2009, CSI management proposed a new policy to replace the Drive Time Pay policy.  (Lekan Decl. at ¶ 13; Lekan Decl., Ex. C, "Assessment of Supplemental Time-Off Proposal;" Justin Koert Dep. at 14)  CSI made this proposal because employees had suggested trading their overnight travel-time pay for a two-week sabbatical so they could spend more time at home.  (**Exhibit 11**, Deposition of Bernard Knaack, p. 8)  CSI provided employees with a written description of the proposed new policy.  (Lekan Decl., Ex. C)  The new policy gave employees a $10.00 per day increase in their *per diem* allowance and an annual two-week paid sabbatical, but discontinued the pay for time spent traveling to remote job sites.  (Lekan Decl., ¶ 12, Ex. C; Dekker Dep. at 46-47, 73; Morris Dep. at 34-35)

CSI employees, including Dekker and Morris, approved the change.  (Dekker Dep. at 74; Morris Dep. at 35)  The new policy took effect in May 2009, and CSI stopped providing travel pay under the old policy at that time.  (Lekan Decl. at ¶ 14)

IV.    **PLAINTIFFS' ACTIVITIES WHILE WAITING FOR WORK TO START DUE TO UNFORESEEN DELAYS**

Each morning while at an out-of-town site, the foreman drove the job crew from their hotel to the job site in the company van.  (Dekker Dep. at 32-33, 36)  If it was raining when they arrived, the foreman would ask the job crew if they wanted to work in the rain or return to the hotel.  (Justin Koert Dep. at 44-45)  The job crew was not required to "wait it out."  (Justin Koert Dep. at 45)  In those situations, the job crew usually decided to return to the hotel.  (Justin Koert Dep. at 45)

On rare occasions, the job crew arrived at the site to find their work would be delayed due to issues caused by truss suppliers or other contractors at the job site.  (Justin Koert Dep. at 45; Dekker Dep. at 83-84; Morris Dep. at 40)  CSI did not require the crew to remain at the job site until work could resume, but allowed the employees to use the time as they chose.  (Justin Koert Dep. at 45-46)  Dekker testified that he usually spent that time getting breakfast, going to a gas station, or returning to the hotel; otherwise he would return to the van where he slept or listened to music.  (Dekker Dep. at 84, 86-88)  Morris spent most of this time sleeping in the van, and sometimes went to a gas station to "get a pop or a pack of cigarettes."  (Morris Dep. at 41-42)  Plaintiffs admit they did no work for CSI during this "waiting" time.  (Dekker Dep. at 123; Morris Dep. at 41)

V.    **PLAINTIFFS' LUNCH PERIODS**

Each workday CSI employees took a one-hour lunch period.  (Dekker Dep. at 31; Morris Dep. at 22; Sally Koert Dep. at 34)  CSI paid the employees for thirty minutes of that time.  (Dekker Dep. at 38, 110; Sally Koert Dep. at 34)  Plaintiffs typically left the job site to eat lunch at a restaurant with the other members of their crew.  (Dekker Dep. at 31; Morris Dep. at 22, 48)

6

Dekker never expressed concerns to CSI management about taking phone calls during his lunch period.  (Dekker Dep. at 104)  In this suit, however, Dekker alleges that during the four jobs where he served as a foreman he took business calls on his cell phone during his lunch period.  (Dekker Dep. at 97)  Viewing the evidence in the light most favorable to Dekker for purposes of this motion, Dekker never spent more than thirty minutes taking business calls during his lunch period.  (Dekker Dep. at 97)

CSI did not expect or require Dekker to take business calls during lunch.  (Justin Koert Dep. at 47)  Dekker never asked the caller if he could return the call later, and never simply turned off his cell phone during lunch.  (Dekker Dep. at 99; Justin Koert Dep. at 58)  Dekker never made an entry on his time sheet for any lunch-period phone calls, even though he often made time-sheet entries when he actually worked through his lunch period.  (Dekker Dep. at 103-104; Lekan Decl., Ex. A)  Dekker also took personal calls during work hours without noting on his time sheet that he had stopped working.  (Dekker Dep. at 104-105)

Plaintiff Morris testified that he never took work-related phone calls during his lunch.  (Morris Dep. at 53)  Morris never performed any work during his lunch periods.  Every time he noted an hour lunch period on his time card, he took a full hour for lunch.  (Morris Dep. at 52)

## ARGUMENT

### I.     LEGAL STANDARDS

#### A.     The Legal Standard for Summary Judgment

Summary judgment is proper under Fed. R. Civ. P. 56 if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Reed v. Auto Workers*, 564 F.3d 781 (6th Cir. 2009).  Once the moving party has supported its motion with facts entitling it to judgment as a matter of law, the burden shifts to

the opposing party to show that summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party "may not rest upon the mere allegations" of the pleadings, but rather, must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ. P. 56.

The nonmoving party will not avoid a properly supported motion for summary judgment merely by pointing to some alleged factual dispute between the parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be a genuine issue as to a material fact. A fact is "material" only if it might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary to the disposition of the claim will not avoid summary judgment. *Anderson,* 477 U.S. at 248. And an issue of fact is "genuine" only if the evidence is sufficient that a reasonable jury could return a verdict for the nonmoving party. *Id.* "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### B. The Legal Standard for Judgment on the Pleadings

A motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted can be raised as a motion for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(h)(2). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the nonmoving party must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. PLAINTIFFS CANNOT ESTABLISH ANY CLAIM FOR COMPENSATION UNDER THE FAIR LABOR STANDARDS ACT, BECAUSE THE UNDISPUTED FACTS SHOW THAT CSI PAID THEM FOR ALL "HOURS WORKED."

The Fair Labor Standards Act ("FLSA") requires an employer to pay a minimum wage for each hour worked and an overtime premium for all hours worked in excess of 40 hours in a work week. 29 U.S.C. §§ 206, 207(a)(1). But the employer's obligation is limited to time that qualifies as "hours worked" as defined by the FLSA. Plaintiffs bear the burden of establishing that CSI failed to compensate them correctly for "hours worked" under the FLSA. *Myers v. Copper Cellar Corp.*, 129 F.3d 546, 551 (6th Cir. 1999).

### A. Plaintiff Were Not Entitled, by Company Policy or by Law, to Pay For Overnight Travel To and From Out-of-Town Job Sites.

Plaintiffs allege that CSI company policy gave them the right to be paid for time traveling in company vans to and from "out-of-town job sites in the southern and eastern portions of the United States." (Complaint, DE # 1, ¶ 14) This claim fails for three reasons, each of which is independently sufficient to require its dismissal.

First, the undisputed facts show that Plaintiffs were not denied pay under a CSI travel-time policy, because CSI and its employees agreed to discontinue that policy. Second, FLSA regulations and case law hold that time spent commuting to job sites in a company-provided vehicle is not compensable as "hours worked." Third, established law also holds that time spent in overnight out-of-town travel outside regular working hours is not compensable.

### 1. CSI Policy Did Not Provide For Employees To Be Paid For Overnight Travel To Job Sites.

Plaintiffs' claim that they should be paid for time spent in overnight travel to out-of-town job sites is based on their allegation that a "written policy" of CSI called for such pay. (Complaint, DE # 1, ¶ 14) In response to a discovery request that he identify information supporting his out-of-town travel claim, Dekker answered: "Page 9 and 10 of Employee

Handbook; I was driving a company vehicle and had a start time in Zeeland, Michigan." (**Exhibit 12**, Dekker's Responses to Defendants' First Discovery Requests, ¶ 6)  Plaintiff Morris, in response to the same discovery request, stated that "page 9 and 10 of the Employee Handbook" supported his claim because "the company vehicle I was in had a start time in Zeeland, Michigan."  (**Exhibit 13**, Morris's Responses to Defendants' First Discovery Requests, ¶ 6)

At the time Plaintiffs were hired, CSI paid employees $10.00 per hour for travel time under the "Drive Time Policy" that Plaintiffs cited in their discovery responses.  (Exhibit 6, p. 10)  But that policy was discontinued in May 2009.  The new policy increased the *per diem* allowance by $10.00 and provided a two-week paid sabbatical each year, but eliminated pay for travel time.  (Dekker Dep. at 74; Morris Dep. at 35; Lekan Decl. at ¶¶ 12-13)  Dekker testified that he thought the new policy was a "good deal."  (Dekker Dep. at 56-57, 74)  Plaintiffs were paid for their travel time according to the old policy until the policy was changed.  (Lekan Decl., ¶ 13)

Because Plaintiffs expressly base their travel time claim on CSI's Employee Handbook, and the undisputed facts prove that Plaintiffs were not entitled to travel time compensation under CSI policy, Plaintiffs' travel time claim fails as a matter of law.

2.	**The FLSA Does Not Require CSI to Pay Plaintiffs For Time Spent Commuting In A Company-Provided Van To Out-of-Town Job Sites.**

a.	**Plaintiffs' Travel from CSI to Out-of-Town Job Sites Was Their Normal Commute From Home To Work.**

The Portal-to-Portal Act amended the FLSA to make clear that employees are not entitled to pay for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.C.S. § 254 (a)(1).  Plaintiffs' travel to and from out-of-town job sites involved "traveling to

and from the actual place of performance of the principal activity or activities" CSI hired Plaintiffs to perform, because Plaintiffs travelled from CSI to their first job site of the day.   As noted in 29 C.F.R. § 785.35, the travel remains a commute even though Plaintiffs traveled to different job sites.   Therefore, the Portal-to-Portal Act does not require CSI to pay Plaintiffs for this commute time.

The fact that Plaintiffs often had to commute long distances does not alter the Portal-to-Portal Act's applicability.   The U.S. Department of Labor regulations interpreting the FLSA state:  "Normal travel from home to work is not work time."  29 C.F.R. § 785.35.  "This is true whether [the employee] works at a fixed location or at different job sites."  *Id.*   The term "normal travel" found in 29 C.F.R. § 785.35 "does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute."   *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 n3 (10th Cir. 2006) (quoting *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999)).   Instead, "it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship."   *Id.* Commuting time is non-compensable "regardless of the length" of the commute as long as it "was a contemplated, normal occurrence" of the employment relationship.  *Kavanagh*, 192 F.3d 269, 273.   Thus courts consistently hold that employers are not required to compensate employees even for long commutes to remote job sites.  *Smith v. Aztec Well Servicing*, 462 F.3d at 1286, n. 3 (denying compensation for seven-hour commutes to remote oil drilling rigs); *Vega v. Gasper*, 36 F.3d 417, 420 (5th Cir. 1994) (denying compensation for commute by farm workers involving extended travel time).

Long-distance commuting was a "contemplated, normal occurrence" of Plaintiffs' job because they "accepted the job with the understanding that [they] would be working in

11

diverse [ ] locations." *Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693, 705 (E.D. Tex. 2007).  Their claim for compensation for their commute therefore fails as a matter of law.

> **b.      Commuting By Carpool in an Employer-Provided Vehicle Is Not Compensable Under the FLSA.**

Under a 1996 amendment to the Portal-to-Portal Act, an employee's commute in a company-provided vehicle is not compensable so long as (1) the time spent in the company vehicle is "within the normal commuting area for the employer's business or establishment," and (2) the use of the company vehicle is subject to an agreement between the employer and the employee.  29 U.C.S. § 254(a).  The "agreement" requirement is satisfied by "an understanding based on established industry or company practices."  *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1052 (9th Cir. 2010).

Plaintiffs' commute satisfies both requirements.   First, as noted above, the "normal commuting area" for CSI's business includes the remote job sites where CSI employees travelled at the beginning of every job assignment.  Second, Plaintiffs had an understanding with CSI that they could use the company vans to carpool to job sites, as they testified they took advantage of the vans to travel to and from every job site.  (Dekker Dep. at 32, 34; Morris Dep. at 32)  Morris testified: "[Y]ou took company vehicles.  That's how it worked."  (*Id.*)

Carpooling to a job site from a central meeting place, rather than directly from home, remains a commute where the employees choose to do so for their own convenience. *Smith v. Aztec Well Servicing*, *supra,* 462 F.3d 1274, 1288 (10th Cir. 2006) (carpooling is part of employees' commute where the employees acknowledged they preferred carpooling); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) (travel by bus from a central location to the worksite is part of the employees' commute, where the employees chose to ride the bus); *Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693, 704-705 (E.D. Tex. 2007) (carpooling in a company

vehicle is part of employees' commute where use of transportation is "strongly encouraged" but voluntary).

Both Plaintiffs testified that they preferred meeting at CSI to carpool in the company van because it avoided wear and tear on their personal vehicles.  (Dekker Dep. at 57-58; Morris Dep. at 31-32)  Therefore, Plaintiffs' travel to out-of-town job sites in a company van was a non-compensable commute under the Portal-to-Portal Act.

### 3.    The FLSA Does Not Require CSI to Pay Plaintiffs For Overnight, Out-of-Town Travel Outside Their Regular Work Hours.

The third reason why Plaintiffs' travel time claim fails is that overnight out-of town travel is not compensable when it does not cut across the employee's regular work day. FLSA regulations define "travel away from home" as follows:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. …

29 C.F.R. § 785.39.  While the regulation discusses the compensability of travel away from home when it cuts across the employee's "normal working hours," the regulation plainly contemplates that such travel is <u>not</u> compensable when – as in this case – it falls entirely outside the employee's working hours.  The U.S. Department of Labor made this clear in a 1996 opinion letter:

> This is in reply to your letter in which you request an opinion on the application of the Fair Labor Standards Act (FLSA) to a variety of travel time situations. …

B.  Travel Away from Home

Q.  5.  Whether travel time for the Project Coordinator and Installer in Company van outside normal work hours to a hotel in another state or city within that state is considered compensable time?

A.  5.  § 785.39 would apply here.  Again, as stated in Answer 1, if the Project Coordinator is *required* to drive the van, the travel time is compensable.  If the Installer is merely a passenger, his/her time would not be compensable.

Q.  6.  Whether travel time for the Project Coordinator and Installer in Company van from hotel to work site before the regular work day and at the end of the regular work day from the work site back to the hotel or to a hotel in the next city on the work schedule is considered compensable time?

A.  6.  Insofar as the first part of this question is concerned, generally, the travel time from the hotel to the work site and back would be considered ordinary home-to-work travel, and, as such, need not be compensated.  Insofar as the second part of the question is concerned, § 785.37 may apply.  However, there is not enough information upon which to base an answer.

Q.  7.  Whether travel time for the Project Coordinator and Installer in Company van outside normal work hours back home after a several state job is completed is considered compensable time?

A.  7.  See Answer 5.

(**Exhibit 14**; Opinion by DOL Office of Enforcement Policy, May 13, 1996)

Plaintiffs drove overnight to and from their out-of-town job sites, and stayed overnight at a hotel or apartment while working there.  (Sally Koert Dep. at 23; Dekker Dep. at 20, 34; Justin Koert Decl at ¶ 3; Isaac Koert Decl. at ¶ 3)  The evidence proves beyond dispute that Plaintiffs' travel time did not "cut across" their workday.  Plaintiffs' regular work day was from 7:00 a.m. to 4:00 p.m.  (Justin Koert Decl. at ¶¶ 4-5; Isaac Koert Decl. at ¶¶ 4-5)  Actual start times or quitting times might vary somewhat from day to day, due to daylight conditions or project demands.  (*Id.*)  But the time sheets on which Plaintiffs themselves recorded their time

14

prove that Plaintiffs' overnight travel to and from job sites were uniformly outside their workday hours on the job site.  (Lekan Decl., Ex. A; Lekan Decl., Ex. B)

The Department of Labor does not consider driving time as "hours worked" where "an employee elects to transport other employees to and from work and such employee is driving the employer's vehicle for his/her own convenience."  (**Exhibit 15**, Department of Labor Field Operations Handbook, 31C02, insert # 1608)[1]  Both Plaintiffs testified that they used the van for their own convenience to avoid wear and tear on their personal vehicles.  (Dekker Dep. at 57-58; Morris Dep. at 31-32)  To the extent Dekker drove, he testified that he did so voluntarily. (Dekker Dep. at 33-34, 58)

It is indisputable, therefore, that Plaintiffs' travel falls within the definition of "overnight out-of-town" travel, which is non-compensable as a matter of law.

**B.    Plaintiffs' Activities While Waiting for Work to Start Due to Unforeseen Delays Do Not Constitute Hours Worked Because Plaintiffs Were "Waiting to Be Engaged."**

Waiting time is not compensable under the FLSA if employees are "waiting to be engaged," rather than "engaged to wait."   29 C.F.R. § 785.14.   In determining whether an employee is engaged to wait, or waiting to be engaged, the Sixth Circuit considers whether the time spent waiting is primarily for the benefit of the employer or the employee.  *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir. 1992).  Whether time spent waiting benefits the employer or the employee depends on the particular circumstances of the case.  *Skidmore v. Swift*, 323 U.S. 134, 136-37 (1944).

This Court considers several factors when determining whether waiting time is primarily for the benefit of the employer or the employee:  (1) the extent to which an employee's

---

[1] Although the Department of Labor Field Operations Handbook is not binding on the Court, the Court may consider it when deciding Defendants' motion.  *Bernal,* 730 F.Supp.2d at 741 n. 4 (citing *Hill v. United States*, 751 F.3d 810, 813 (6th Cir. 1984).

free will is constrained during the waiting time, (2) the extent to which the employer actually benefits from the waiting time, (3) whether the agreement and understanding between the employer and employee indicate that waiting time will be compensated, and (4) whether the employer requested or required that the employee wait. *Bernal v. Trueblue, Inc.*, 730 F.Supp.2d 736, 741 (W.D. Mich. 2010). All of these factors weigh in favor of CSI in this case.

1. **CSI Did Not Constrain Plaintiffs' Free Will Because CSI Permitted Plaintiffs to Leave the Job Site and Plaintiffs Used the Time for Personal Activities.**

Courts note that "the critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes." *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1189-90 (5th Cir. 1989); *see also* 29 C.F.R. § 785.16. "The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities." *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992).

As noted above, Plaintiffs were free to do what they wanted if weather or other issues delayed the start of their workday. (Justin Koert Dep. at 44-46) Plaintiffs did no work for CSI during the delay. (Dekker Dep. at 123; Morris Dep. at 41) Instead, Plaintiffs spent this time getting breakfast, going to a gas station, returning to the hotel, or relaxing in the company van. (Dekker Dep. at 84, 86-88; Morris Dep. at 41-42; Justin Koert Dep. at 44-46) To the extent Plaintiffs' mobility was restricted, this was not due to CSI's actions but to Plaintiffs' voluntary choice to leave their personal vehicles at home and carpool in the van. (Dekker Dep. at 87) This "critical" factor weighs in CSI's favor.

2. **CSI Did Not Benefit from the Waiting Time.**

In determining whether waiting time is for the employer's benefit, courts consider the extent to which an employer actually benefits from employee waiting time. *See, e.g., Irwin v.*

16

*Clark*, 400 F.2d 882, 883 (9th Cir. 1968) (finding waiting time non-compensable where "the plaintiffs performed no services for the employer" while waiting).  Again, Plaintiffs freely admit that they did not perform any work that benefitted CSI while they waited to begin work.  (Dekker Dep. at 123; Morris Dep. at 41)  This factor weighs in CSI's favor.

### 3.     CSI Did Not Agree to Pay Plaintiffs for Waiting Time.

Courts also look to the "agreements between the particular parties" when deciding whether waiting time is for the employer's benefit.  *Skidmore v. Swift*, 323 U.S. 134, 136-137 (1944).  The CSI Employee Handbook makes no promise that employees will be paid for time spent waiting at job sites.  (Exhibit 6)  CSI supervisors never agreed to pay Plaintiffs for waiting time.  (Justin Koert Decl., ¶ 6; Isaac Koert Decl, ¶ 6)  There is no evidence in the record that Plaintiffs would have had any reasonable expectation of being paid for waiting time.  This factor weighs in CSI's favor.

### 4.     CSI Did Not Require Plaintiffs to Wait at the Job Site.

Waiting benefits the employer only when "it is requested or required by the employer."  V*ega*, 36 F.3d at 426.  In this case, CSI did not request or require that Plaintiffs wait at job sites.  The delays were caused by circumstances outside CSI's control, such as weather conditions or the actions of third parties.  (Justin Koert Dep. at 44-45; Dekker Dep. at 83-84; Morris Dep. at 40)  Regardless, CSI did not require its employees to remain at the job site until work could resume, but allowed them to use the time as they chose.  (Justin Koert Dep. at 45-46) If it was raining, employees could choose whether they wanted to work in the rain or wait.  This factor weighs in CSI's favor.

All four factors used to determine whether waiting time is compensable weigh in CSI's favor.  Therefore, Plaintiffs' claim for waiting time pay must be dismissed.

C.   **The FLSA Did Not Require CSI to Pay Plaintiffs for the Unpaid Portion of Their Lunch Period, Because Plaintiffs Were Completely Relieved of Their Duties.**

The Complaint alleges that Plaintiffs were not "completely relieved of their duties" during lunch periods because they had to "accept and make phone calls." (Complaint, DE # 1, ¶ 17)  Under the FLSA regulations, "bona fide" meal periods of thirty minutes or longer are not compensable where the employee is "completely relieved from duty for the purpose of eating meals." 29 C.F.R. § 785.19.  The Sixth Circuit recognizes that determining whether an employee is "completely relieved from duty" during a meal period must be based on a "flexible and realistic standard for compensability." *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984).  The FLSA does not require an employer to compensate an employee for meal periods "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominately for the employer's benefit." *Id.*

At his deposition, Morris admitted that that he did not take phone calls during his lunch period.  (Morris Dep. at 53)  He testified that if he "wrote down an hour" for lunch on his time sheet, he "took an hour." (Morris Dep. at 52)  It is not surprising, then, that he testified: "My allegation isn't even hardly about this whole lunch thing."  (*Id.*)  Morris's own testimony defeats any claim that he was entitled to pay for any meal periods.

Plaintiff Dekker testified that he took mealtime business calls only during jobs where he served as foreman.  (Dekker Dep. at 97)  Dekker first served as a foreman in March 2010.  (Dekker Dep. at 74-75; Lekan Decl. ¶ 5)

Although lunch periods lasted an hour, CSI paid Dekker for thirty minutes of that time.  (Dekker Dep. at 31, 38, 110)  Dekker must therefore prove that he took business calls for more than thirty minutes during any particular lunch period to survive summary judgment on this

18

claim. During his deposition, Dekker testified that he spent at most thirty minutes taking business calls during any particular lunch period, and could not remember any time where he spent more than thirty minutes on the telephone during lunch. (Dekker 97, 109-10)

In response to Defendants' interrogatories, Dekker identified on his phone records every single call that he claims supports the allegation that he was not "substantially relieved" from his duties during lunch periods.[2] (**Exhibit 16**, Plaintiff Dekker's Responses to Defendants' Second Set of Interrogatories, ¶ 5) All but three of the identified dates involved phone calls totaling five minutes or less, and the three remaining dates (September 30, 2009, September 23, 2010, and October 6, 2010) involved calls totaling between ten and twelve minutes. (*Id.*) This evidence underscores Dekker's testimony that he never took business calls totaling more than thirty minutes during any lunch period. Without question, therefore, CSI more than fully compensated Dekker for any alleged lunch-period calls.

Dekker himself apparently did not consider these phone calls to be "substantial" activities, as he never asked the caller if he could call back later (Dekker Dep. at 99), never turned off his phone to avoid calls (*Id.*), never mentioned concerns about these calls to management (*Id.* at 104), and never noted this alleged "working" time on his time sheet (*Id.* at 103). Dekker also admitted taking personal phone calls while on the job without clocking out, further weakening his argument that telephone calls were so substantial as to convert work time to non-work time or vice-versa. (Dekker Dep. at 104-105)

Ultimately, Dekker's lunch period claim fails under the Sixth Circuit's "flexible and realistic" test for determining whether he spent his lunch periods "predominately for the employer's benefit" in compensable activities. Dekker almost always traveled to a restaurant during his lunch period, and so pursued his lunchtime "adequately and comfortably" at an offsite

---

[2] Dekker maintained only one cell phone number during the time CSI employed him. (Dekker Dep. at 10-11)

location.  Occasional calls that generally lasted no more than five minutes, and very rarely lasted ten to twelve minutes, are *de minimis* activities that not caseu the entire meal period to be time spent "predominately for the employer's benefit."

   **D.**   **Any Claims Outside FLSA's Two-Year Default Statute of Limitations Fail As a Matter of Law, Because Defendants' Actions Were Not Willful.**

   Ordinary violations of the FLSA are subject to its default 2-year statute of limitations.  29 U.S.C. § 255; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  To obtain the benefit of the 3-year exception to the standard 2-year rule, Plaintiffs must prove that Defendants engaged in "willful" conduct.  *Id.* The Supreme Court notes that "Congress intended to draw a significant distinction between ordinary violations and willful violations."  *Id.* at 132.  Therefore, Plaintiffs bear the burden of proving that CSI acted in a manner that was more than merely negligent, but that CSI either "knew or showed reckless disregard for" whether its conduct violated the FLSA.  *Id.* at 133.

   Plaintiffs' Complaint contains a single rote recitation that "Defendants' violations of the FLSA were knowing and willful," but provides no factual allegation whatsoever in support of that claim.  (Complaint, DE # 1, ¶ 26)  As shown above, all of Plaintiffs' FLSA claims fail as a matter of law.  And because there is no evidence to support a claim of a willful violation, the only relevant period of inquiry is the two years immediately preceding the filing of the Complaint.

**III.   PLAINTIFFS' MINIMUM WAGE LAW CLAIM FAILS BECAUSE THE LAW DOES NOT APPLY TO PLAINTIFFS' EMPLOYMENT WITH CSI.**

   Plaintiffs allege that CSI violated the Michigan Minimum Wage Law of 1964 (MMWL).  (Complaint, DE #1, ¶¶ 30-40.)  However, the MMWL states:

> This act does not apply to an employer who is subject to the minimum wage provisions of the fair labor standards act of 1938, 29 USC 201 to 219, unless those federal minimum

> wage provisions would result in a lower minimum hourly
> wage than provided in this act.

MCL § 408.394(1).  The MMWL currently provides for a minimum hourly wage rate of $7.40.

MCL § 408.384.

Plaintiffs themselves claim that CSI is subject to the FLSA.  (Complaint DE #1, ¶

21)  Under the plain language of the statute, the MMWL does not apply to Defendants absent

evidence that Plaintiffs received less than $7.40 per hour in wages under the FLSA's provisions.

Plaintiffs cannot produce any evidence that any FLSA provision results in their being paid less

than $7.40 per hour.  Therefore, unless Plaintiffs dismiss their FMLA claims, their MMWL

claim fails as a matter of law.

## IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE DEFENDANTS PAID PLAINTIFFS FOR ALL HOURS WORKED.

To prevail on a claim of unjust enrichment under Michigan law, Plaintiffs must

show:  (1) receipt of a benefit by CSI from Plaintiffs, and (2) an inequity resulting to Plaintiffs

because CSI retained the benefit.  *Barber v. SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d

791 (1993).  Plaintiffs claim that they conferred a benefit to CSI through uncompensated work.

(Complaint, DE #1, ¶ 42)  However, if the Court determines that CSI is entitled to summary

judgment on Plaintiffs' other claims, Plaintiffs' unjust enrichment claim also fails because they

were, as a matter of law, compensated for all "work" performed.

## V.   THE COURT SHOULD DISMISS PLAINTIFFS' STATE PREVAILING WAGE CLAIM.

### A.   The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' Unrelated and Distracting State Prevailing Wage Claims.

28 U.S.C. § 1367(a) grants a district court "broad discretion" to decide whether to

exercise jurisdiction over state-law claims that are "so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy."  *Gamel v. City of*

*Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C. § 1367(a)).  The Sixth Circuit

holds that claims form part of the same case or controversy "where they derive from a common

nucleus of operative facts." *Blakely v. U.S.*, 276 F.3d 853, 861 (2002) (citing *Ahearn v. Charter

Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996).  The "general employer-

employee relationship between the parties" alone does <u>not</u> create a sufficient common nucleus of

operative facts.  *Lyon v. Whisman*, 45 F.3d 758, 762 (3d Cir. 1995).

　　　　　Plaintiffs' FLSA claim shares no "common nucleus of operative facts" with their

state prevailing wage law claim.  The former involves an analysis of whether hours allegedly

spent travelling, waiting at job sites, and eating lunch constitute "hours worked" under federal

law.  (Complaint, DE # 1, ¶¶ 14-15, 17)  The latter involves analysis of whether Plaintiffs

worked on any projects that were funded by a state, whether each project was subject to a state

prevailing wage law, whether the state specified a prevailing wage for the work Plaintiffs

performed and, if so, whether Plaintiffs were paid that wage for each covered hour.  (Complaint,

DE # 1, ¶¶ 45-48)  The Court should decline to embark on that substantial departure from the

federal claim before it.

　　　　　Even where a court finds that the federal and state law claims form part of the

same case or controversy, the court may still decline to exercise supplemental jurisdiction over a

state law claim where, among other things, (1) the claim raises a novel or complex issue of state

law, (2) the state law claim "substantially predominates" over the federal claim, or (3) there are

other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).  The potential for jury

confusion can be a sufficiently "compelling reason" for declining jurisdiction.  *Padilla v. City of

Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994).  When determining whether to retain

jurisdiction, courts consider several factors, including the "values of judicial economy,

convenience, fairness, and comity." *Gamel*, 625 F.3d at 952 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Plaintiffs allege a state prevailing wage violation in New Jersey as well as "many" other unnamed states.   (Complaint, DE # 1, ¶¶ 45-47)  Plaintiffs' state law claims could potentially require this federal Court, as well as a jury, to understand, interpret, and apply the prevailing wage laws of an unknown number of unidentified states.  Therefore, Plaintiffs' state law prevailing wage claim will substantially distract from their federal FLSA claim.  In the interest of judicial economy and fairness, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law prevailing wage claim.

**B.  The Court Should Dismiss Plaintiffs' Prevailing Wage Claim Under Fed. R. Civ. P. 12(c) Because Count IV Fails to State a Claim upon Which Relief Can Be Granted.**

Defendants move for judgment on the pleadings on Plaintiffs' state prevailing wage claim because it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiffs must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" must be disregarded. *Id.* at 1949; *see also Brown v. Cassens Transp. Co.,* 743 F. Supp. 2d 651, 659 (E.D. Mich. 2010) (quoting *Twombly,* 550 U.S. at 555) ("a formulaic recitation of the elements of a cause of action will not do")*.*

Count IV of the Complaint alleges that "many of the States that the Plaintiff's [*sic*] have worked in have enacted prevailing wage laws requiring a minimum payment to be made to the employer's employees for work done on governmental projects or projects funded by the government."  (Complaint, DE # 1, ¶ 45)  Plaintiffs offer nothing more than the

23

conclusory allegation that "Defendants have failed to pay to Plaintiffs the prevailing wages owed to them for the work they have completed on jobs subject to prevailing wage requirements." (Complaint, DE # 1, ¶ 48)  This is precisely the type of "threadbare recital" that fails to state a claim under *Iqbal* and *Twombly*.  Therefore, Plaintiffs' prevailing wage claims should be dismissed.

### C.  Plaintiffs Cannot Prove That They Performed Any Work Covered by the New Jersey Prevailing Wage Act.

Plaintiffs' prevailing wage claim cites but a single state law – the New Jersey Prevailing Wage Act, which Plaintiffs quote:

> Any worker paid less than the prevailing wage for building services to which the worker is entitled by the provisions of this act may recover in a civil action the full amount of the prevailing wage for building services less any amount actually paid to the worker by the employer together with any costs and reasonable attorney's fees allowed by the court.

(Complaint, DE # 1, ¶ 47)  The quoted provision covers public "building services."  N.J.S.A. 34:11-56.62.  New Jersey law defines "building services" as "any cleaning or building maintenance work, including but not limited to sweeping, vacuuming, floor cleaning, cleaning of rest rooms, collecting refuse or trash, window cleaning, engineering, securing, patrolling, or other work in connection with the care, securing, or maintenance of an existing building…." N.J.S.A. 34:11-56.59.

Plaintiffs identified only two New Jersey jobs where they believe CSI violated the above provision.  (Dekker Dep. at 113; Morris Dep. at 60)  Plaintiffs testified that these two jobs involved construction work such as setting trusses and soffit framing.  (Dekker Dep. at 113-14; Morris Dep. at 60)  Plaintiffs' own testimony defeats their prevailing wage claim as a matter of

law, as their work on these sites did not involve the types of "building services" covered by their claim.

Moreover, the New Jersey Prevailing Wage Act only applies to workmen engaged in "public works" as defined by the Act.  N.J.S.A. 34:11-56.25, 34:11-56.26.  Plaintiffs never worked on any CSI projects in New Jersey that were "public works" covered by the New Jersey Prevailing Wage Act.  (Lekan Decl. at ¶ 15)  Because the undisputed facts how that Plaintiffs did not perform any work covered by any portion of the New Jersey Prevailing Wage Act, the Court should grant summary judgment on their prevailing wage claim.

## CONCLUSION

For the reasons shown above, Defendants' Motion for Summary Judgment and Motion for Judgment on the Pleadings should be granted and Plaintiffs' claims dismissed with prejudice.

Respectfully submitted,

MILLER JOHNSON
Attorneys for Defendants

Dated:  January 17, 2012            By /s/ William H. Fallon
                                       William H. Fallon (P33132)
                                       Stephanie J. Cebulski (P74955)
                                    Business Address:
                                       250 Monroe Avenue, N.W., Suite 800
                                       PO Box 306
                                       Grand Rapids, Michigan  49501-0306
                                     Telephone:  (616) 831-1700
                                       fallonw@millerjohnson.com

GR_DOCS 1766942v3