**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
_____

TRENTON DEKKER and KYLE MORRIS

               Plaintiffs,                         Case No.  1:11-cv-00252-RHB

vs.                                               Hon. Robert Holmes Bell

CONSTRUCTION SPECIALTIES of ZEELAND, INC.,
a Michigan corporation,
JUSTIN KOERT, individually,
BERNARD KNAACK, individually, and
ISAAC KOERT, individually,

               Defendants.
_____/

| | |
|---|---|
| Gregory J. McCoy (P51419) | William H. Fallon (P33132) |
| Nicholas R. Dekker (P70930) | Stephanie J. Cebulski (P74955) |
| CUNNINGHAM DALMAN, PC | MILLER JOHNSON |
| Attorney for Plaintiffs | Attorneys for Defendants |
| 321 Settlers Rd., PO Box 1767 | 250 Monroe Avenue, NW, Suite 800 |
| Holland, MI  49422-1767 | PO Box 306 |
| 616.392.1821 | Grand Rapids, MI  49501-0306 |
| | 616.831.1700 |

_____/

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY DISPOSITION**

***ORAL ARGUMENT REQUESTED***

      Plaintiffs, Trent Dekker and Kyle Morris, by and through their attorneys Cunningham Dalman, PC, respond to Defendants' Motion of Summary Disposition stating as follows:

**INTRODUCTION**

      Plaintiffs' were not properly compensated as required by the FLSA.   Defendants misquote, misconstrue and ignore critical regulations, facts and analysis in the various cases

1

they cite.   Defendants' reliance on cases involving commuting is misplaced since commuting is by definition travel that involves a return to the worker's home at the end of the workday. Even the cases cited by Defendants provide a clear blueprint of how the plaintiffs in those cases were not entitled to compensation, and illustrate the application of the regulations that show Trent Dekker and Kyle Morris are clearly entitled to compensation for their travel time.

Further, Plaintiffs are entitled to an extensive amount of waiting time that was done at the behest of the employer and for the employer's benefit.  This waiting time was extensive and it was directed by the job foreman when the crews would arrive early from their drives from Michigan and the general contractor was not ready for them to start, and for other reasons such as weather or waiting on delivery of materials.

Next, the violations were willful, based on evidence that the Defendants became angry about certain compensable time being recorded that the Defendants did not want recorded. The Plaintiffs were explicitly not to record certain compensable time.   In addition, Defendants admit to deliberately shaving compensable travel time based on their own estimate of how long the trip should have been.  The Defendants also deliberately failed to pay overtime for compensable travel time.

### STATEMENT OF FACTS

A more accurate and full explanation of how the Plaintiffs' workweek unfolded will give this Court a better understanding of the facts and the application of critical FLSA regulations that the Defendants are trying to ignore.   As outlined in the Declaration of Trent Dekker, **Exhibit 1**, the Plaintiffs' typical workweek started as follows:  On Monday evenings, the Plaintiffs, along with other crew members, were required to report to a designated location, which was the Defendants' Zeeland, MI facilities in order to:

(1) get necessary instructions for the construction job they will be working on for the next 10 days including crew assignments, locations and what work would be performed,

(2) determine what equipment and supplies they will need for the particular job.   The Plaintiffs and would load the van with these specialized tools and supplies such as saws, levels, screws, pins, shot for the pins, bits, monster hooks, mig welder, welding supplies, string, spools of wire, and safety items.   To obtain these items they would go into the Defendants' facilities and sort through boxes, sometimes having to unwrap skids, and once they located what they needed, they would count out the proper amount of supplies and load it into the vans.  They would also gather the various pieces of equipment around the shop.

(3) load the van and often a trailer (manually attached to the van by the Plaintiffs and other crew) with the equipment, tools, parts and supplies that were necessary to perform the work.  On this trailer the Plaintiffs would load large and heavy pieces of equipment or materials.  For example, depending on the particulars of the job, this would include scissor lifts (2500 – 5000 lb, depending on lifts taken), boom lifts, "hat track" (10 ft bracing for trusses), metal studs (10-20 foot long), ladders , scaffolding, trusses, and a 50 gallon fuel cell.

(4) attend a mandatory safety instructional meeting, called a "tool box" meeting.  Usually, the company owners instructed the workers about a particular piece of equipment, general safety instructions or material safety data sheets.  These meetings would last 20-25 minutes and the workers would sign a sheet that was passed around when the meeting was done.  These sheets were given to the general contractor.  There were then announcements made at the meeting, such as other instructions, feedback from the general contractor and updates on jobs.

and

(5) clean the vans.

This Monday evening routine took approximately 45 to 60 minutes, and after the work is completed the various crews would depart in company vans for generally a 10-14 hour ride to worksites outside the State of Michigan, in the southern or eastern portions of the United States.  Sometimes these long trips were not directly to the worksite, but required dropping off

3

equipment or transporting a crewmember to another job before continuing on to their final destination.

Once the crews arrived at their destination on Tuesday morning, generally around 7 to 9 am, after this 10-14 hour drive, they start work at the construction site and work throughout the day.   The crews conducted out-of-town construction work for the next 10 days, staying overnight in hotels near the construction site, and then after a shortened workday on the last day of the 10 day work cycle, a Thursday, the crews got back in the vans, generally around 3-4 pm to drive the 10-14 hours required to transport themselves and equipment back to the Defendants' Zeeland facilities, generally arriving in the very early morning of Friday at the Zeeland facilities.   Once arriving at the Zeeland facilities, the workers would then spend approximately 20-30 minutes unloading the vans and trailers of equipment and tools, unhooking and storing the trailer, and then getting in their cars and going home.

## ARGUMENT

### Legal Standards

Summary judgment is proper under Fed. R. Civ. P. 56 if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Reed v. Auto Workers*, 564 F.3d 781 (6th Cir. 2009).  Once the moving party has supported its motion with facts entitling it to judgment as a matter of law, the burden shifts to the non-moving party.  There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.,* 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere

existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n., Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980). Chakan v. City of Detroit (Detroit Fire Dept.), 998 F. Supp. 779, 782 (E.D. Mich. 1998)

## LAW AND ANALYSIS

### I. Introduction to Application Regulations Requiring Compensation for Travel Time

In regard to the violations of the FLSA's travel time pay requirements, there are effectively four different sets of regulations that, when applied to the facts of this case, show that the Plaintiffs have not received proper compensation for their travel time.   These regulations are as follows:

First, there is a FLSA regulation that provides that once work begins that all subsequent travel is compensable time.  This regulation is 29 C.F.R. § 785.38.   The most basic example that illustrates this regulation is the salesperson that comes into the office, does some work, and then leaves for his first appointment.   Though travel directly from his home to the first appointment of the day would have been considered commuting, the trip to the office first makes the subsequent trip to the customer a continuation of the work day and, therefore, compensable time.   This same regulation addresses the last trip of the day.   Using the same salesman example, if the trip from the last customer is directly home, the last trip is commuting and not compensable.  If the salesman goes to the office before returning home, only the ride from the office to home is considered commuting and is not compensable.   As explained in more detail below, and as supported by the affidavits and depositions attached, the Plaintiffs were required to do significant work prior to traveling to their out-of-town assignments.

Next, there is a regulation, 29 C.F.R. § 785.39, that applies to overnight travel.   This regulation is independent of 29 C.F.R. § 785.38, so even if the Plaintiffs had not already started work, invoking 29 C.F.R. § 785.38, the Plaintiffs would be entitled to pay for travel time involving overnight travel, with certain exceptions.   This regulation provides that employees who travel during their normal working hours to an out-of-town job site where an overnight stay is expected, are entitled to compensation for the travel time.   Another regulation, 29 C.F.R. § 790.7, addresses travel outside of working hours and provides that "where an employee travels outside his regular working hours at the direction and on the business of his employer, the travel would not ordinarily be "walking, riding, or traveling" of the type referred to in section 4(a)" [of the Portal to Portal Act, making the time compensable].

Lastly, even absent the other regulations, there is a statutory exception under the Portal-to-Portal Act that applies when the employer has a policy to compensate workers for travel time.   If there is a policy to pay for travel, it is treated as compensable time under the FLSA.   Though the Defendants ended this travel policy in late May, 2009, it was applicable for approximately 15 months of the Plaintiffs' work for Defendants that was within the statute of limitations period.   Though the Plaintiffs were compensated only for the out-bound trip (at a reduced rate), these hours were improperly ignored by the Defendants in calculating overtime, resulting in a FLSA violation.   In addition, Defendants deliberately shaved payment on the driving hours that were reported based on how long they thought the drive should have taken, which is a deliberate violation of the FLSA.

II.    **Plaintiffs' Start of Work at Zeeland Facility Required All Subsequent Travel Time to be Compensable**

The principal fact that the Defendants fail to mention is that work *began* once the Plaintiffs reported to the Defendants' Zeeland facilities and started work loading tools,

equipment and supplies, receiving instructions and/or participating in a safety meeting.[1] Since the workday had begun through these activities, the subsequent driving time, whether it was for 15 minutes or 15 hours, is all compensable.   Other relevant facts that the Defendants overlook is that the Plaintiffs were required to transport equipment and supplies necessary to perform the construction work, and the case law says this is a "principal activity" subject to compensation.

In regard to what is considered compensable travel time under the FLSA, the regulation C.F.R. § 785.38 states that starting work by receiving instructions or performing other work triggers the start of the work day, requiring compensation for all of the travel time.   The relevant regulation is:

§ 785.38 Travel that is all in the day's work.

Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. *Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.* If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

29 C.F.R. § 785.38 (emphasis added).

Case law, including, <u>Smith v. Aztec Well Servicing Co.</u>, at 1290; <u>Vega v. Gasper</u>, 36 F.3d 417, 424 (5th Cir. 1994), discussed in more detail below, provide analysis of these regulations and how they would apply to the instant case to entitle Trent Dekker and Kyle Morris to

---

[1] There is a specific FLSA regulation, 29 C.F.R. § 785.27, on employee meetings and training, which is considered "work" and thus the start of the workday unless four separate tests outlined by the regulation are met by the employer, none of which are met under our facts.   Time spent attending employer-sponsored lectures, meetings, and training programs is considered compensable unless 29 C.F.R. § 785.27 can be satisfied. <u>Chao v. Tradesmen Int'l, Inc.</u>, 310 F.3d 904, 907-08 (6th Cir. 2002).

compensation.   A further example is <u>Dunlop v. City Electric Inc</u>., 527 F.2d 394, 401 (5th Cir. 1976) which demonstrates that the types of activities performed by Trent Dekker and Kyle Morris are the start of work.  In <u>Dunlop</u>, involving electricians, the Fifth Circuit Court of Appeals held that the plaintiffs' pre-shift activities, including filling out time sheets, checking job locations, cleaning and loading trucks, fueling trucks, and picking up electrical plans for the day's work, were "principal" as defined by the Portal-to-Portal Act, and thus the start of work. *Id.* at 396-97. <u>Dooley v. Liberty Mut. Ins. Co.</u>, 307 F. Supp. 2d 234, 244 (D. Mass. 2004) (the appraisers travel from home *after* the workday has begun, so the travel time was compensable).

Trent Dekker and Kyle Morris were required to report to the designated location of the Defendants' Zeeland facilities and then they did a significant amount of work upon arrival and prior to leaving for their 10-14 hour trips in vans to out-of-state locations.  For instance, since job assignments and crews would often change, they needed to receive instructions about the job they would be working on and how many roof trusses they would be installing.   The Defendants admit that this was a fluid process about who would be going where.  [Knack, p 18-19].   The Plaintiffs were then required to determine what items were necessary for the project, locate them in the facility and load them into the van. The Plaintiffs would also often have to load heavy and large equipment and building supplies onto the trailer that would be towed behind the vans.   The vans were clean and a "tool box" meeting would begin educating the crew on various work-related equipment and safety issues.

As stated in <u>Smith v. Aztec Well Servicing Co.</u>, 462 F.3d 1274, 1288-90 (10th Cir. 2006), and  <u>Johnson v. RGIS Inventory Specialists</u>, 554 F. Supp. 2d 693, 704 (E.D. Tex. 2007), 29 C.F.R. § 785.38 is based upon the "continuous workday" or the "whistle to whistle" rule, which provides that, during a continuous workday, any riding or traveling time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of the Portal-to-Portal Act, and as a result is covered by the FLSA.

The <u>Smith</u> court has examined this regulation has stated that a de minimus amount of work will not trigger this doctrine **where an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all."** Clearly the work conducted by Trent Dekker and Kyle Morris before they left on their out-bound trips was extensive and was not a de minimus amount of work.  It was labor intensive work and required concentration.  Also, the employer required them to understand the safety instructions given at the "tool box" meeting, which according the Defendants' own words, they wanted the Plaintiffs to sign off on indicating they understood the instructions.

III.     **Transporting Equipment, Parts and Supplies Needed to do the Construction Work is Considered Work under the FLSA, and Therefore Compensable Time.**

In addition to the required work to prepare to leave for the trip, the Plaintiffs were transporting equipment and supplies that were necessary to do their work, which alone, makes the travel time compensable, even ignoring the fact that the work day had already begun before they started driving.[2]  The transporting of equipment would be considered compensable since the workers are performing an activity which is so closely related to the work which they and other employees perform, that it must be considered an integral and indispensable part of their principal activities.  <u>Smith v. Aztec Well Servicing Co.</u>, 462 F.3d 1274, 1287 (10th Cir. 2006).   An activity is integral and indispensable to the principal activities only if "such work is necessary to the [employer's] business and ... performed by the employees ... in the ordinary course of that business. <u>Smith v. Aztec Well Servicing Co.</u>, at 1290; <u>Vega v. Gasper</u>, 36 F.3d 417, 424 (5th Cir. 1994).  The Supreme Court has defined "principal activities" to include anything "integral and indispensable" to the work for which the employee was hired, even if performed before or after the regular work day, <u>Reich v. Brenaman Elec. Serv.</u>, CIV.A. 95-CV-

---

[2] Though the workers also loaded their personal belongings in the van, which process takes less than a minute and is considered a "preliminary activity" and not the start of work under the FLSA, the subsequent labor to obtain instructions, load equipment, supplies and tools, and participate in a safety instructional meeting is clearly work under the FLSA and is the start of the workday.

3737, 1997 WL 164235 (E.D. Pa. Mar. 28, 1997) quoting (Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).

The principle that ordinary home-to-work travel is not compensable has been applied to situations where travel to the work site is not coupled with any other activity.  Preston v. Settle Down Enterprises, Inc., 90 F. Supp. 2d 1267, 1280 (N.D. Ga. 2000) citing (Ralph v. Tidewater Constr. Corp., 361 F.2d 806, 808 (4th Cir.1966)). Travel has been held part of the employee's principal activity and therefore compensable when it is coupled with transporting equipment without which the employee's job could not be done. Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1349 (10th Cir.1986) (workers carried special equipment for servicing oil rigs); D A & S Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552 (10th. Cir.1958) (driving trucks hauling special equipment is compensable).

The case of Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1287 (10th Cir. 2006), cited by Defendants supports the Plaintiffs' case since it illustrates how distinctions in facts between the workers in Smith and the instant case result in a completely different outcome.   The plaintiffs in Smith had to travel up to few hours away to drill sites and then return at the end of the day.   The Court ruled it falls within the Portal-to-Portal Act and the travel time is not compensable.  For instance, the workers in Smith were not briefed about the job nor given safety instructions until they arrived at the remote job site.   The Court noted that if they had been given these instructions in advance, it would have triggered the start of the work day and the travel time would have been compensable.  Smith at 1289.  The workers only had to load personal safety equipment which took a de minimus amount of time.   The workers did not have to transport equipment required to service wells and the purpose of the travel was only for the transportation of employees, not also equipment, to and from their principal place of work.  The Smith court noted that the transportation of equipment would have made the work compensable.  Smith at 1289.

The facts in Smith clearly contrast with the facts in the instant case, where Trent Dekker and Kyle Morris were required to meet to receive instructions, load an extensive amount of

equipment and supplies, , engage in a safety meeting, and then transport this equipment to the job site.   All of these activities make the travel time compensable under the analysis of <u>Smith</u>.

Therefore, under the regulations, the work day clearly started and compensation is required for the subsequent travel.   Further, independently of the fact that the work day was triggered by the activities prior to leaving on the trip, transporting of equipment, tools and supplies needed for the job are services essential to the principal activity of construction work, making all of the driving compensable.

Further, on the return trip, the work continued since the Plaintiffs were required to transport equipment and unused supplies back to the Defendants' facilities, and in addition, the Plaintiffs needed to unload vans and trailers at the Zeeland facilities once they arrived.  *See* 29 C.F.R. § 785.38 (where employee is required to return to employer's premises prior to returning home, that travel time is compensable).   <u>Burton v. Hillsborough County, Fla.</u>, 181 F. App'x 829, 835 (11th Cir. 2006).  <u>Crenshaw v. Quarles Drilling Corp.</u>, 798 F.2d 1345, 1350 (10th Cir. 1986)(Workers that transport equipment are required to be compensated.  Employees who transport equipment without which well servicing could not be done, are performing an activity); <u>Walling v. Mid-Continent Pipe Line Co.</u>, 143 F.2d 308 (10th Cir. 1944)(Where employees were required to drive employer's trucks and equipment from place where work was performed to employer's warehouses before employees were relieved of their duties, the time is compensable).

> **IV.**   **In regard to travel, the Portal-to-Portal Act only precludes compensation for "commuting" which as interpreted by the regulations is travel in which the employee returns home at the end of the workday.**

The Defendants also misplace reliance on the Portal-to-Portal Act, 29 USC Sec. 254, as a defense.  Under this Act, employers are not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are "preliminary to or postliminary to" their principal activities at work.   This Act provides that ordinary commuting, whether, walking, riding or driving, to the place of performance of work is non-compensable.

The part that the Defendants ignore or overlook is that the applicable regulation [29 C.F.R. § 785.35] defines the term "traveling" in § 254(a)(1) as incidental travel-typically in the form of *home-to-work and work-to-home travel-and not employer-required travel.*  Burton v. Hillsborough County, Fla., 181 F. App'x 829, 834 (11th Cir. 2006)(emphasis added); Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1286 (10th Cir. 2006); Vega v. Gasper, 36 F.3d 417, 424 (5th Cir. 1994).

> "An employee who travels from home before his regular workday **and returns to his home at the end of the workday** is engaged in ordinary home-to-work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime."

29 C.F.R. § 785.35 (1990) (emphasis added).

Defendants appear to rely on a theory that since long travel was typical, that the travel time is not compensable, and should be treated as ordinary commuting.   The Defendants are merely misapplying cases involving long commuting times in which the worker returns home at the end of the day.   See, for example, Defendants' reference to Smith v. Aztec Well Servicing co., Kavanagh v. Grand Union, 192 F.3d 269 (2d Cir. 1999) and Vega v. Gasper, 36 F.3d 417 (5th Cir. 1994), and Johnson v. RGIS Inventory Specialists 554 F. Supp.2d 693 (E.D. Tex. 2007), all of which involved long commuting distances, but did not involve overnight travel, and did not involve facts where work had either already begun with preliminary activities or required transporting of equipment or other essential items to perform the job.  The courts in those cases all analyzed 29 C.F.R. § 785.38 and determined there were not facts to support is application since they were not meeting in advance to load tools or receive instructions. Instead, the courts determined that 29 C.F.R. § 785.35 was applicable since the workers, though engaged in often long commutes, did return to their home towns at the end of their shifts.

For example, in Vega, seasonal farm workers were denied pay for travel time because they were returning to their home community at the end of the work day.  The Vega court noted that where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated

place to the workplace is part of the day's work, and must be counted.   The court noted, however, that the workers in <u>Vega</u> did not load tools or engage in activities that prepared them or their equipment for the work to be done either before or while riding on the buses.

The results in <u>Kavanagh</u> and <u>Johnson</u> were the same for the worker, who engaged in long drives between his home and the stores where he performed services.   This employee returned to his home after the end of each shift, making it "commuting" under the Portal-to-Portal Act.  These employees were not required to receive instructions, pick up and carry equipment or perform other work prior to starting their driving.

In conclusion, the Plaintiffs' case does not involve commuting and does not involve incidental travel-typically in the form of *home-to-work and work-to-home travel-and not employer-required travel.*   This travel is overnight out-of-town travel, and it occurred after the regular work day had begun.

> **V.**   **The Plaintiffs Traveled During Working Hours and the Overnight Travel Regulations Require Pay During those Hours and for the Hours of the Driver.**

Even absent the application of 29 C.F.R. § 785.38 that makes *all* of the Plaintiffs' travel time compensable, and that the transporting of equipment made the travel all compensable, a different regulation, 29 C.F.R. § 785.39, requires compensation, with some exceptions, for travel time to an out-of-town destination where an overnight stay is expected.  29 C.F.R. § 785.39 is stated as follows:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these

hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

29 C.F.R. § 785.39.

The last clause states that being a passenger in an airplane, train, etc. outside of regular business hours is not compensable.   This is because the passenger is free to pursue personal activities when not driving.   However, the obviously implication is that someone who is not merely a passenger, but is a driver, is entitled to compensation under this regulation.   Further, as provided in 29 C.F.R. § 790.7  "where an employee travels outside his regular working hours at the direction and on the business of his employer, the travel would not ordinarily be "walking, riding, or traveling" of the type referred to in section 4(a)" [of the Portal to Portal Act, making the time compensable].   Therefore, the driver of the vehicle is entitled to compensation while driving even when it is outside of regular working hours.

Further, the workers were required to drive to get to the out-of-state worksites.   The Defendants did not offer to fly the Plaintiffs or anyone else, and flying would not have made sense since the equipment, parts and supplies needed to be transported.   Though no particular person was directed to drive at any given time by the company, someone was obviously required to drive at all times and switching drivers was necessary and prudent given the length of the trips and the hours they were driven (e.g., portions were late at night and very early in the morning). [See Dekker Decl. Par. 4]  In addition, the FLSA requires compensation when a worker is permitted or allowed to work. Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008) citing 29 USC 203(g).

 Work not requested but suffered or permitted to be performed is work time that must be paid for by the employer.   This rule applies even if the employee "volunteers" to do something.   Therefore, even though the Plaintiffs, when they drove, were not forced to drive, someone by definition had to drive, and they were nevertheless allowed to drive, and this is compensable time under the applicable regulation.   The voluntariness of the employees'

14

actions is irrelevant; the important question is whether the activity is performed with the knowledge and approval of the employer and for the employer's benefit.  Sec'y of Labor, U. S. Dept. of Labor v. E. R. Field, Inc., 495 F.2d 749, 751 (1st Cir. 1974).

In the instant case, regular working hours varied, but according to Defendants depositions (as opposed to contradictory affidavits), regular working hours were from "sun up to sun down" as testified by Defendant Justin Koert, the Company President.  [Koert, p 18].  The Plaintiffs were not compensated for this extensive travel during regular working hours and they also personally drove the vehicles during hours that were not regular working hours.   Under the above stated regulation, the Plaintiffs are entitled to compensation for this time.

The application of this regulation is illustrated in *Treadway v. BGS Construction*, 2007 WL 2815439 (attached as **Exhibit 2**). In this case, a "traveling construction company," typically had its employees drive to out-of-town job sites that required an overnight stay, in which the crew worked 10 days before returning home.    The court held that the employer must pay Plaintiffs for their travel time from their homes in southern West Virginia to the construction company's distant work sites, since such travel required an overnight stay.   The time was compensable since it involved an overnight stay even though the workers did not report to a central office prior to leaving for their trip.

The facts in *Treadway* are very similar to the claims against Construction Specialties. The workers were entitled to all of their travel time due to the fact that there was an overnight stay.   The fact that out-of-town travel was routine was irrelevant, contrary to Defendants' suggestion that routinely doing out-of-town overnight trips somehow turned the travelling into non-compensable "commuting."  The workers in *Treadway* also were not required to report into a central location to receive instructions, training, load equipment, and then haul the equipment, which would have been an additional basis to provide them compensation for their travel time.

The Defendants attempt to address this regulation by claiming in affidavits that the Plaintiffs only drove outside of regular working hours.   This is blatantly false for a number of reasons:

First, the hours reported as "normal work hours" in the Defendants affidavits contradict not only the timesheets but also explicit deposition testimony which stated that "normal work hours" "change throughout the year" but are from "sun up to sun down."  [Justin Koert Deposition, p18].   The time records show that the Plaintiffs very commonly worked until around 5:30 pm, with a large number of days that extended much later into the evening, sometimes with work not ending until around midnight.  The Plaintiffs worked when the Defendants told them to, and those hours varied, but the hours were much more consistent with Justin Koert's deposition testimony as opposed to an affidavit prepared for this motion.

Next, Defendants reported 7 am as the normal start time, but the Plaintiffs were often still driving at 7 am, and did not get the job sites until much later.

Next, on the return trip, the Plaintiffs departed the work-site between around 3 pm in general, but often much earlier, so they started driving during regular working hours.

 For example, taking just one job into account, the Fort Bragg project from June 15 – August 14, 2009, [CSI Disclosures 345-358, **Exhibit 3**] it resulted in the Plaintiffs week-after-week driving all night and arriving as late as 11 am in the morning and no sooner than 9 am. Even based on the Defendants' alleged normal start time of 7 a.m, it means there was anywhere between 2-4 hours of driving time during regular working hours which would be compensable under this regulation.   In addition, on the return trips, travel began back to Michigan at around 2:15 pm on one occasion, and around 11 am on another occasion.   Even taking Defendants' false normal end time of 4 pm, this results in anywhere between 1 ¾ to 5 hours of driving time during regular working hours for each Plaintiff.   This job is just the tip of the iceberg since the Plaintiffs consistently did not arrive until after 7 am on the out-bound trip and almost always left early on Thursday to return to Michigan.

Further, the Defendants' analysis does not address the fact that compensation is due when someone is driving, whether or not it is during regular working hours.  Someone is obviously required to drive the van and Trent Dekker and Kyle Morris both drove many hours.  They did not keep a log of the hours they drove, but they are able to provide a reasonable estimate of their time.

## VI.      Written Policy to Pay for Travel Time and Other Short Payments

Defendant CSI had a written policy to pay for travel time from Michigan to the out-of-state job site.  This policy was apparently in effect until near the end of May, 2009.   The word "apparently" is used since the Defendants issued a new written policy eliminating the payment policy, but the Defendants are not sure when the policy was issued.

This policy provided for the payment of travel time at the rate of $10.00 per hour.  Defendants, when paying under this policy, made a point of shaving off hours based on what Mapquest said the trip should take, apparently because they thought the workers were taking too much time to drive.  Defendants recognized that an inefficient worker is still paid their full wage, but had no basis to dock the pay for someone driving too slow.

Attached as **Exhibit 4** has various time sheets and paystubs showing various pay shortages.   Since the lawsuit was filed, Defendants have attempted to tender a check for some of these shortages, but the checks were not cashed and are not accepted as resolution of these claims.

## VII.     1996 Amendment to the Portal-to-Portal Act and commuting cases cited by Defendants

The 1996 Amendment to the Portal-to-Portal Act, known as the Employee Commuting Flexibility Act (ECFA), was issued as a result of case law that said workers were entitled to

17

compensation for commuting in company vehicles.   The amendment only addresses commuting time, which is not applicable here.

The purpose of this amendment was to make it clear that the use of an employer's vehicle does not necessarily turn what would otherwise be non-compensable commuting time into compensable time, so long as certain conditions are met, such as an agreement regarding use of the vehicle.   See Reich v. Brenaman Electric Service, where the court stated that "Congress clarified the mere use of an employer's vehicle by an employee, without further work by the employee, is not compensable."  Also,  Burton v. Hillsborough County, Fla., 181 F. App'x 829, 835 (11th Cir. 2006), in interpreting the ECFA stated that it only addresses commuting time (i.e, time to and from work and return to home at the end of the workday) and that the mere use of an employer-owned vehicle does not eliminate this distinction between incidental or non-compensable travel and required or compensable travel.

Further, Defendants' various case law cites and arguments on Page 12-13 of the Defendants' Brief is irrelevant since they address commuting.   Further, though the Plaintiffs theoretically had the option of driving their own vehicles, assuming others on their crew were willing to drive the van, there was still the requirement of meeting at the Zeeland facilities to obtain instructions, load equipment, clean vans, and participate in a safety meeting was required, and it was not for the "convenience" of the employee.   Even without the required work at the Zeeland location, the requirement to meet at the Defendants' facilities to start the travel makes the travel time compensable.

Subsequent travel from an employer-designated location to the workplace is compensable under the FLSA as that travel constitutes a part of the employee's principal activity . . . Consequently, where an employer's mandate or job requirement interrupts an employee's home-to-work and work-to-home path, the travel time necessary for the employee to fulfill that requirement falls outside of exempted

activity in § 254(a), and is therefore compensable under the FLSA. As explained below, this is true even when an employee is using an employer-owned vehicle.

Burton v. Hillsborough County, Fla., 181 F. App'x 829, 834-35 (11th Cir. 2006).

Clearly, the ECFA amendment to the Portal-to-Portal Act is inapplicable, as are its reliance on facts relating to commuting cited in other cases.  This is not a commuting case. Ultimately the fact that this case pertains to overnight travel, there was a requirement to meet in order to perform work before departing and there was a transporting of a significant amount of equipment necessary to perform the construction work, takes the Plaintiffs case outside of the fact patterns that resulted in the plaintiffs in other cases being denied compensation.

### VIII.     The Plaintiffs Were Not Properly Compensated for Waiting Time

Defendants recitation in their Brief of the applicable cases and standards as to whether someone is "engaged to wait" (which is compensable) or "waiting to be engaged" (which is not compensable is not in question.   What is objectionable is the fact that they are ignoring the "continuous work day doctrine" and also misstating or misapplying facts.

For instance, Defendants misquote Trent Dekker's testimony about wait times.  Trent Dekker was asked if they ever left the worksite when they were waiting, and Trent indicated that sometimes they did, such as going to a gas station or back to the hotel.   The part that Defendants fail to quote that that he also explained that this did not happen often.   [Dekker, p86].

As referenced in the Declaration of Trent Dekker, a lot of the waiting times were just sitting and waiting because the Defendants set the departure times from Michigan and they had the crews depart too early for the travel time needed to get to the out-of-state job site. The crews would arrive at the work site but it was too early to start work because the general

contractor had not arrived.   However, regardless of the complexities of the wait time case law, Plaintiffs were still "on the clock" since this time between the traveling from Michigan and the work at the construction site was part of their "continuous work day." 29 C.F.R. § 785.38, as discussed above would have already "triggered the start of the workday." Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1288-90 (10th Cir. 2006), and Johnson v. RGIS Inventory Specialists, 554 F. Supp. 2d 693, 704 (E.D. Tex. 2007); Preston v. Settle Down Enterprises, Inc., 90 F. Supp. 2d 1267, 1281 (N.D. Ga. 2000) (requiring workers to report and receive instructions triggers start of work day).   Therefore, the time waiting for the work to begin was part of the same continuous work day and was compensable.

Additional wait times that the Plaintiffs complain about are those in which they were told or forced to wait at or near the job site for various reasons.   These wait times were sometimes due to weather, they were waiting on materials to be delivered, or the portion of the job they were working was not ready for them yet. [Dekker, p83-84].   Sometimes when the workers had wait times, the crews had time they would go to Lowes or Home Depot and buy additional items needed for the job such as welding tips (that were not inventoried by the employer), and miscellaneous tools or supplies that were forgotten or needed.  The Plaintiffs would also need fill gas cans needed for the job at a gas station.   Rarely did the Plaintiffs ever go to a restaurant or have time to do anything meaningfully themselves.  [Dekker, Decl. Par. 6].

Waiting benefits the employer when it is requested or required by the employer. *Wirtz v. Sullivan,* 326 F.2d 946, 948 (5th Cir.1964); Vega v. Gasper, 36 F.3d 417, 425 (5th Cir. 1994). Further, the Court of Appeals remanded the issue of whether the workers in Vega were entitled to compensation for wait time.   The workers in Vega could have taken their own vehicles to the work site, but nevertheless the court did not penalize them for this and but instead noted that they lacked transportation of their own since a bus was taken, and could not use their time meaningfully for themselves.

Under the facts of the instant case, the Plaintiffs had nowhere to go and nothing to do other than wait.   The foreman (the boss of their crew) also dictated whether they were going

to do anything other than wait, so it was not within the Plaintiffs' control.   Further, the Plaintiffs were out-of-town, sitting by a worksite waiting for the job to start.   Only rarely did they necessarily know when the job could start, but they knew they had to be ready to go when it could start.

As recognized by <u>Chao v. Akron Insulation & Supply, Inc.</u>, 184 F. App'x 508, 511 (6th Cir. 2006), the workers, even though socializing or drinking coffee are still waiting for the employer's benefit.   To the extent that employees were waiting at times during some mornings, and drinking coffee and socializing while they waited, the wait was for defendant's benefit and the time could not be utilized effectively by the employee, making it compensable.

In conclusion on the wait time issue, a large part of the waiting time is on Tuesday mornings after arriving from Michigan.   This waiting time is a product of when the Defendants directed the Plaintiffs to leave from Michigan, which often was too early.  Plaintiffs were not "choosing" to get to the worksite early and are waiting for the employer's benefit so they can be ready to work once the foreman arrives.  This time was also part of the continuous workday that started before the driving began.

Additional wait times were dictated by job conditions and weather, and were under the control of the job foreman as to whether they would wait.   Typically they were not aware of how long the wait would be, so they could not risk leaving and not being available when work could begin.   Again, this is waiting time as directed by the immediately supervisor, the foreman, and it is for the benefit of the employer so that the crew was ready when work could begin.

IX.     Defendants' FLSA violations were wilful

Next, the violations were willful, based on evidence that the Defendants actually directed Plaintiffs not to record certain compensable time and became angry about certain compensable time being recorded. [Dekker, p 71, 80, 88-89].  It was clearly company policy to not want any record of certain compensable time.  The Plaintiffs were explicitly not to record

certain compensable time.   In addition, Defendants admit to deliberately shaving compensable travel time based on their own estimate of how long the trip should have been.  The Defendants also deliberately failed to pay overtime for compensable travel time.  [See Exhibit 4]

Based on the ability to observe these witnesses, a judge or jury could ultimately be able to determine that Defendants acted with guilty knowledge that there acts were wrongful or that they acted recklessly without basis to believe their actions were lawful.

**X. THE COURT SHOULD ENFORCE PLAINTIFFS' NEW JERSEY PREVAILING WAGE CLAIM**

A.     The Court Should Exercise Jurisdiction Over Plaintiffs' New Jersey Prevailing Wage Claim.

As noted by Defendants, 28 U.S.C. § 1367(a) grants a district court broad discretion to exercise jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  This is precisely the situation of the instant case.

Defendants claim there is no "common nucleus of operative fact" under *Blakely v. U.S.*, 276 F.3d 853, 861 (2002) with regard to the FLSA and prevailing wage claims by stating that the FLSA claim "involves analysis of whether hours allegedly spent traveling … constitute "hours worked" and the prevailing wage claim "involves analysis of whether Plaintiffs worked on projects … subject to a state prevailing wage law."  Defendants' argument is essentially, because they are different legal questions, they are unrelated.  This argument does not hold water.  In fact, Plaintiffs' claim is that the Defendants are liable for FLSA violations that occurred while traveling to the job in which they were not paid a prevailing wage.  Under *Gamel*, Plaintiffs' claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

Citing 28 U.S.C. § 1367(c), Defendants next argue that even if the court finds separate claims to be related, it can still decline to exercise jurisdiction over a state-law matter. Ironically, Defendants now cite judicial economy as a concern when they were previously happy to have the claims heard separately by different courts.  28 U.S.C. § 1367(c) allows the court to decline the matter when (1) the claim raises a novel or complex issue of state law, (2) the state law claim "substantially predominates" over the federal claim, or (3) there are other compelling reasons for declining jurisdiction. *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994).  From this, Defendants have alleged that there are "other compelling reasons" for the court not to hear the claim.  Defendants believe the court and the jury may be confused in having to apply the law of another state, especially if they have to apply the law of several states.  Plaintiffs only seek damages from failure to pay a prevailing wage in the state of New Jersey.  Plaintiff believes that the court and jury are competent to understand the Ney Jersey Prevailing Wage Act, especially since it is the only prevailing wage law being applied.

B.      Plaintiffs Have Stated a Claim Upon Which Relief Can be Granted and Have Performed Work Covered by the New Jersey Prevailing Wage Act.

Plaintiffs claims with regard to failure of defendant's to pay minimum wages are sufficient to prevail on the claim.  Plaintiffs cite to the New Jersey Prevailing Wage Act which states in pertinent part:

> If any workman is paid by an employer less than the prevailing wage to which such workman is entitled under the provisions of this act such workman may recover in a civil action the full amount of such prevailing wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between such workman and the employer to work for less than such prevailing wage shall be no defense to the action. Any workman shall be entitled to maintain such action for and on behalf of himself or other workmen similarly situated, and such workman and workmen may designate an agent or representative to maintain such action for and on behalf of all workmen similarly situated. At the request of any workman paid less than the prevailing wage to which such workman was entitled under the provisions of this act the

23

commissioner may take an assignment of the wage claim in trust for the
assigning workman and may bring any legal action necessary to collect the claim,
and the employer shall be required to pay the costs and such reasonable
attorney's fees as may be allowed by the court.

N.J. Stat. Ann. § 34:11-56.40

Plaintiffs further allege that the Defendants have "failed to pay to the Plaintiff's the
prevailing wages owed to them for the work they have completed on jobs." Throughout
discovery, Plaintiffs have sought to have Defendants provide them with copies of prevailing
wage contracts for projects in the state of New Jersey. Defendants continue to refuse to
provide same. Plaintiffs hereby request that this court order Defendants to produce the above
referenced contracts.

Defendants further claim that Plaintiff's cannot prove that they performed any work
covered by the New Jersey Prevailing Wage Act. Plaintiff's disagree with this assertion and
further note that it is Defendant that has the burden of proof on a Motion for Summary
Judgment. Defendant cites to the definition of "public works" as defined in N.J.S.A. 34:11-
56.25, being construction, reconstruction, demolition, alteration, custom fabrication, or repair
work, or maintenance work, including painting and decorating, done under contract and *paid
for in whole or in part out of the funds of a public body*, except work performed under a
rehabilitation program, in hopes of making clear that no work performed by Plaintiffs was
under the New Jersey Prevailng Wage Act. This assertion is insufficient especially when
Plaintiff's were told by Defendants that their work at the Grand Hotel in Cape May, New Jersey
was a prevailing wage job. Plaintiffs continue to assert that Defendants misclassified their
employment.

**CONCLUSION**

Plaintiffs have demonstrated that there has been major FLSA violations by Defendants.
The facts presented show that Plaintiffs were required to come to the Defendants' facilities to

begin extensive work in preparation for their out-bound trip. This is the start of their work day under the FLSA and all subsequent travel time is compensable. They were also required to transport specialized equipment and supplies necessary to do their jobs, which is considered work under the FLSA. Regardless of this regulation, overnight travel occurred during regular working hours and the Plaintiffs were drivers of the vehicles outside of the regular hours. Even under the travel policy that was in effect during the statute of limitation period, the Defendants violated the FLSA by shaving time and not applying overtime to the hours worked. The various cases cited by Defendants do not help them, but rather these cases greatly undermine the Defendants' argument.

The waiting time was compensable since a large part of it was part of the continuous work day and the remainder was due to the direction of the foreman who required they wait since it was unclear when work would begin and they had to be present on site when the general contractor was ready for them.

It is requested that Defendants' motion be denied and summary judgment be granted in Plaintiffs' favor, along with all other relief equitable under the circumstances.


Dated: February 14, 2012          Respectfully submitted,


         Cunningham Dalman, PC
         Attorneys for Plaintiffs

         /s/ Gregory J. McCoy_____
           Gregory J. McCoy (P51419)

         Business Address:
           321 Settlers Road
           Holland, MI 49423
         Telephone: 616-392-1821